IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 4, 2003 Session

## CARROL PRESTON FLANNARY v. JOYCE ANN FLANNARY

**Appeal by Permission from the Court of Appeals
Circuit Court for Hawkins County
No. 10161     Ben K. Wexler, Judge**

**No. E2002-00869-SC-R11-CV - Filed December 16, 2003**

We granted permission to appeal to determine whether the trial court erred in dividing as marital property funds that were missing at the time the divorce complaint was filed. We hold that the missing funds are not marital property that can be divided between the parties. However, we also conclude that the trial court may properly consider Husband's careless handling of those funds in distributing property that does constitute marital property. Therefore, we affirm the judgment of the Court of Appeals as modified, and we remand the case to the trial court for reconsideration of its property division and alimony award.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Affirmed as Modified; Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Timothy R. Wilkerson and John D. Parker, Kingsport, Tennessee, for the appellant-defendant, Joyce Ann Flannary.

James H. Beeler, Kingsport, Tennessee, for the appellee-plaintiff, Carrol Preston Flannary.

### OPINION

### Factual and Procedural Background

The appellee, Carrol Preston Flannary ("Husband"), and the appellant, Joyce Ann Flannary ("Wife"), were granted an absolute divorce on October 22, 2001. A hearing was held on February 1, 2002, to determine issues that were reserved pending further orders of the trial court. One of the issues addressed at this hearing was the disposition of funds totaling $48,000 that had been withdrawn from a savings account by Husband.

Husband testified that he began drawing money out of the account in September of 1999 in response to the Y2K scare. He withdrew $8,000 to $10,000 at a time in hundred-dollar bills and placed the funds in his bedroom drawer. He testified that he planned to re-deposit the money in January of 2000. However, when he went to do so he discovered that the money was gone. Husband admitted that keeping the money in the drawer was "stupid" and that he never thought of putting the money in a safe deposit box. Husband alleges that Wife is responsible for taking the money, but Wife has denied this allegation throughout the proceedings. Wife contends that she did not know that Husband had withdrawn the money until he accused her of taking it.

In its memorandum opinion, the trial court found that the evidence presented was insufficient to determine what happened to the money but stated that Husband was "in full control of this money after it left the bank until it got in that drawer." The court found that only Husband knew that the money was in the house and that it was his decision to put it in his bedroom drawer. The court stated that "[t]here are a lot of other safer places to put [the money]. To put it in a fruit jar and buried [sic] it in the back yard would have been better than putting it in that drawer, because a lot of things could have happened to it . . . ." The court concluded that the money was marital property and had to be "divided like any other marital property." Consequently, in its order dated March 12, 2002, the trial court awarded Wife a judgment against Husband in the amount of $24,000, which represented one-half of the missing funds. In deciding to award Wife only "a little bit of alimony," the trial court considered that "[s]he's getting a pretty good whack of money out of his retirement," which included the $24,000 judgment.

A majority of the Court of Appeals vacated the portion of the trial court's order that awarded Wife a judgment with respect to the missing $48,000. The majority relied on Brock v. Brock, 941 S.W.2d 896 (Tenn. Ct. App. 1996), and concluded that "[s]ince the money disappeared prior to the divorce, the Trial Court erred in dividing property which was 'not there' as neither Husband nor Wife was able to show that the other had taken the money." The majority affirmed the remainder of the trial court's judgment.

Judge Charles D. Susano, Jr. filed a separate opinion in which he concurred in part and dissented in part. Judge Susano disagreed with the majority to the extent it held that the trial court erred in awarding Wife the $24,000 judgment. He interpreted the trial court's memorandum opinion to mean that Husband's "careless handling of these funds was the efficient cause of their disappearance," and he characterized Husband's handling of the money as "dissipation" for purposes of Tennessee Code Annotated section 36-4-121(c)(5). We granted review.

**Analysis**

I. Classification as Marital Property

In divorce cases, a trial court has the authority, upon the request of either party, to equitably divide the marital estate between the parties. Tenn. Code Ann. § 36-4-121(a)(1) (2001); see also Manis v. Manis, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001). Trial courts have broad discretion in

fashioning an equitable division of the marital estate. See Tenn. Code Ann. § 36-4-121(c) (2001); Manis, 49 S.W.3d at 306. Because of the court's broad discretion, its division of assets is not a mechanical process. Manis, 49 S.W.3d at 306.

Tennessee is a "dual property" state. Smith v. Smith, 93 S.W.3d 871, 875 (Tenn. Ct. App. 2002). Accordingly, the division of a marital estate must start with the classification of the parties' property. Brown v. Brown, 913 S.W.2d 163, 166 (Tenn. Ct. App. 1994). Property is classified as either marital or separate property. Id. Only marital property is equitably divided as part of the marital estate. Tenn. Code Ann. § 36-4-121(a)(1) (2001); Brock v. Brock, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996). "Marital property" is defined by statute to mean "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and *owned by either or both spouses as of the date of filing of a complaint for divorce*." Tenn. Code Ann. § 36-4-121(b)(1)(A) (2001) (emphasis added).

Under the definition found at Tennessee Code Annotated section 36-4-121(b)(1)(A), the missing funds are not "marital property" that is subject to division. It is undisputed that the money was missing before Husband filed for divorce, and both parties testified that the money was not in their possession. Furthermore, the trial court concluded that anything could have happened to the money and stated that "neither one of [the parties] knows what happened to it." Thus, it appears from the record that the property was not owned by either of the parties as of the date the complaint for divorce was filed. Accordingly, this property does not fit within the definition of "marital property" and should not have been divided as part of the marital estate. Id.; see also Brock, 941 S.W.2d at 900 (stating that "property once owned by a spouse, either as separate property or marital property, but not owned by either spouse at the time of divorce, is not subject to classification and division or distribution when the divorce is pronounced"). This conclusion, however, does not end our analysis as to the effect of Husband's handling of the funds.

## II. Equitable Division of Marital Property and Award of Alimony

A trial court's division of marital property must be guided by Tennessee Code Annotated section 36-4-121(c).[1] This statute provides that in making an equitable division of marital property

---

[1] In making equitable division of marital property, the court shall consider all relevant factors including:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;

(continued...)

a trial court must consider all relevant factors. Although we hold that the funds themselves are not marital property that can be divided between the parties, the trial court may properly consider Husband's careless handling of those funds in distributing property that does constitute marital property.

Tennessee Code Annotated section 36-4-121(c)(5) requires a court to consider "[t]he contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property." Under Tennessee Code Annotated section 36-4-121(c)(11), a court must consider "[s]uch other factors as are necessary to consider the equities between the parties." These provisions require the trial court to consider the actions of the parties throughout the course of the marriage. See Storey v. Storey, 835 S.W.2d 593, 598 (Tenn. Ct. App. 1992) (looking at Husband's excessive spending during the parties' separation in considering the factors listed in Tennessee Code Annotated section 36-4-121(c)(5)).

The trial court specifically found that Husband "was in full control of [the] money after it left the bank until it got in [the] drawer" and that "[h]e was the last person in control of [the funds]." The court also found that putting the money in a fruit jar and burying it in the backyard "would have been better than putting it in that drawer, because a lot of things could have happened to it." These findings suggest that it was Husband's careless handling of the funds that caused their disappearance and that the trial court regarded Husband's conduct as relevant in considering the equities between the parties. Husband's careless handling of the funds could be characterized as a failure to preserve a marital asset under Tennessee Code Annotated section 36-4-121(c)(5). See Black's Law Dictionary 1184-85 (6th ed. 1990) (defining "preservation" as "[k]eeping safe from harm; avoiding injury, destruction, or decay; maintenance . . . not the creation, but the saving of that which already exists, and implies the continuance of what previously existed"); see also Barker v. Barker, 992

---

[1] (...continued)

> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;
> (10) The amount of social security benefits available to each spouse; and
> (11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (2001).

S.W.2d 136, 138 (Ark. Ct. App. 1999) (explaining that the trial court's division of the proceeds from the sale of the marital home was based on the Husband's failure to preserve marital assets by wasting the parties' savings). In the alternative, since Husband's careless handling of the funds affected the equities between the parties, such handling could be regarded as a necessary factor in considering those equities. See Tenn. Code Ann. § 36-4-121(c)(11) (2001).

In this case, a remand to the trial court is appropriate to allow the trial court to consider the relevance of Husband's conduct with regard to the missing funds. On remand, the trial court may reconsider its equitable division of the marital property in light of our reclassification of the missing funds. See Langschmidt v. Langschmidt, 81 S.W.3d 741, 750 (Tenn. 2002); Smith, 93 S.W.3d at 880-81. Our reclassification of the funds may also require the trial court to reconsider its award of alimony. See Tenn. Code Ann. § 36-4-121(a)(1) (2001) (providing that a trial court may award alimony only after the court has equitably divided the parties' marital property). Since the trial court considered Wife's $24,000 award in awarding Wife only "a little bit of alimony," on remand, the court also may reconsider its alimony award. See Langschmidt, 81 S.W.3d at 750; Smith, 93 S.W.3d at 881.

**Conclusion**

We hold that the trial court erred in classifying the missing funds as marital property and in awarding Wife a judgment in the amount of one-half of the missing funds. However, we further conclude that Husband's careless handling of those funds may be considered in distributing property that does constitute marital property. Accordingly, the judgment of the Court of Appeals is affirmed as modified, and the case is remanded to the trial court for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Carrol Flannary, and his surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

-5-