# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### November 13, 2003 Session

## RICHARD JOHN JOLLY v. LYNETTE SUZANNE JOLLY

**Appeal by Permission from the Court of Appeals**
**Chancery Court for McNairy County**
**No. 7471     Martha B. Brasfield, Chancellor**

---

**No. W2001-00159-SC-R11-CV - Filed March 19, 2004**

---

This appeal arises out of divorce proceedings brought in the District Court of Johnson County, Kansas, and the Chancery Court of McNairy County, Tennessee. In dividing the parties' real property, the chancery court reduced Husband's share by the amount of the child support arrearage and discovery-related sanction assessed by the Kansas court in its decree of divorce. We granted permission to appeal. We conclude that the chancery court erred in enforcing a decree that was not properly registered under the Uniform Interstate Family Support Act. Therefore, the judgment of the Court of Appeals is reversed, and the case is remanded to the chancery court for proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded to the Chancery Court**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Richard John Jolly, Bethel Springs, Tennessee, Pro Se.

Ken Seaton, Selmer, Tennessee, for the appellee, Lynette Suzanne Jolly.

Paul G. Summers, Attorney General and Reporter; and Pamela A. Hayden-Wood, Assistant Attorney General, for the intervenor, State of Tennessee.

## OPINION

### Factual and Procedural Background

On November 30, 1999, Richard John Jolly ("Husband") filed a Petition for Divorce in the Chancery Court of McNairy County, Tennessee. In response to this petition, Lynette Suzanne Jolly ("Wife") filed an answer and a countercomplaint. In her countercomplaint, Wife stated that a

petition for divorce was pending in the District Court of Johnson County, Kansas ("the Kansas court"), and asked the Tennessee chancery court to enforce any child support orders entered by the Kansas court. She also requested that the chancery court equitably divide the parties' marital property.

The Kansas court held a hearing on Wife's divorce petition on June 21, 2000. Husband did not attend this hearing. The Kansas court entered a Judgment and Decree of Divorce in which it granted Wife an absolute divorce on the ground of incompatibility, granted Wife sole legal and residential custody of the parties' four minor children, decreed that Wife would have sole discretion to structure Husband's visitation with the children, and ordered Husband to pay child support in the amount of $1,359 per month. The court also ordered Husband to pay a child support arrearage in the amount of $16,848 and imposed a $500 sanction for Husband's failure to comply with the court's discovery order of March 14, 2000. Because the court found that it did not have jurisdiction over the parties' real property located in McNairy County, Tennessee, it did not divide this marital asset of the parties. The Kansas court's divorce decree was never domesticated in Tennessee.

The chancery court set the case for trial on December 4, 2000. Before trial, Husband moved to vacate the child custody, visitation, and support orders entered by the Kansas court, stating that "should there have been or should there be in the future any attempt to register the Kansas Child Custody, Support, and Visitation orders in Tennessee that [Husband] does contest those orders and moves that they be vacated." Husband did not appear for trial, and the chancellor proceeded on Wife's countercomplaint.

The chancery court entered an order on December 21, 2000, reflecting that the Kansas court had granted the parties a divorce. Upon finding that it had jurisdiction to determine the property issues related to the parties' divorce, the chancery court directed the clerk and master to sell the parties' real property at public auction. The court ordered that the first $26,000 of the net proceeds from the sale be paid to Wife to compensate her for the separate property she used in purchasing and improving the real property. The court further ordered that the remaining net proceeds be divided equally between the parties, with Husband's half reduced by the amount of the child support arrearage and the discovery-related sanction that the Kansas court ordered him to pay in its divorce decree.

On appeal, Husband argued that the chancery court was required to first register the Kansas court's decree and to provide him with notice and an opportunity to contest its validity before ordering the division of the parties' marital property and reducing his share of the sale proceeds by the amount of his child support arrearage and by the sanction imposed. The Court of Appeals disagreed and affirmed the judgment of the chancery court.

We granted permission to appeal.

## Analysis

In divorce cases, a trial court has the authority, upon the request of either party, to equitably divide the marital estate between the parties. Tenn. Code Ann. § 36-4-121(a)(1) (1996); Flannary v. Flannary, 121 S.W.3d 647, 649 (Tenn. 2003). Trial courts are afforded wide discretion in equitably dividing marital property. Tenn. Code Ann. § 36-4-121(a), (c) (1996); Flannary, 121 S.W.3d at 650. Appellate courts generally defer to the trial court's decision unless it is inconsistent with the factors in Tennessee Code Annotated section 36-4-121(c) or the evidence preponderates against the trial court's ruling. Manis v. Manis, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001).

Tennessee Code Annotated section 36-4-121(c) directs trial courts to consider "all relevant factors" in arriving at a property division.[1] The Court of Appeals determined that the chancery court properly considered the child support arrearage assessed by the Kansas court as a relevant factor under Tennessee Code Annotated section 36-4-121(c). Tennessee Code Annotated section 36-4-121(c)(2) provides that trial courts shall consider the parties' financial liabilities and financial needs in dividing the marital estate. We conclude, however, that the practical effect of the chancery court's consideration of the arrearage, as well as the discovery-related sanction, was to improperly enforce parts of the Kansas court's decree.

---

[1] In making equitable division of marital property, the court shall consider all relevant factors including:

> (1) The duration of the marriage;
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
> (4) The relative ability of each party for future acquisitions of capital assets and income;
> (5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;
> (6) The value of the separate property of each party;
> (7) The estate of each party at the time of the marriage;
> (8) The economic circumstances of each party at the time the division of property is to become effective;
> (9) The tax consequences to each party; and
> (10) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (1996).

In the countercomplaint she filed in the chancery court, Wife explicitly asked the court to enforce any child support orders entered by the Kansas court by creating a lien in her favor against Husband's interest in the parties' real property. It appears that the chancery court did exactly as Wife asked. The chancery court's order of December 21, 2000, stated that "[t]he remaining net proceeds of the sale of the real property shall be divided equally but [Husband's] one-half shall be subject to the child support arrearage in the amount of $16,848.00 as well as the $500.00 [Husband] was ordered to pay in the Final Decree of Divorce." By specifically referring to the Kansas court's decree and assessing the exact amounts ordered by that court, the chancery court's order effectively compels Husband's compliance with the decree. The act of compelling such compliance epitomizes the definition of "enforcement." See Black's Law Dictionary 549 (7th ed. 1999) (defining "enforcement" as "[t]he act or process of compelling compliance with a law, mandate, or command"). By reducing Husband's equitable share of the marital property by the amount of the child support arrearage and the discovery-related sanction, the chancery court, in essence, enforced these provisions of the Kansas court's divorce decree.

The chancery court's enforcement of these provisions is problematic because the Kansas court's decree was never domesticated in Tennessee. See Frazier v. Frazier, 72 S.W.3d 333, 335 (Tenn. Ct. App. 2001) ("Judgments obtained in sister states are valid and enforceable when properly domesticated in the courts of this State."). The Uniform Interstate Family Support Act ("UIFSA") provides a procedure for domesticating foreign judgments, decrees, or orders involving child support or spousal support in Tennessee. See Tenn. Code Ann. § 36-5-2301 (Supp. 1999); Tenn. Code Ann. §§ 36-5-2601 to -2603 (Supp. 1999). Under this act, a foreign decree that contains a child or spousal support order must be registered before the support order can be enforced. See Tenn. Code Ann. §§ 36-5-2601 to -2603 (Supp. 1999). To register such a decree, the documents and information listed in Tennessee Code Annotated section 36-5-2602(a) must be sent to the trial court in the county in which the decree will be registered.[2] Once the request for registration is received, the registering court files the decree as a foreign judgment. Tenn. Code Ann. § 36-5-2602(b) (Supp. 1999).

---

[2] To register a foreign support order, the following documents and information must be sent to the trial court in the county with appropriate jurisdiction:

> (1) A letter of transmittal to the tribunal requesting registration and enforcement;
> (2) Two (2) copies, including one (1) certified copy, of all orders to be registered, including any modification of an order;
> (3) A sworn statement by the party seeking registration or a certified statement by the custodian of the records showing the amount of any arrearage;
> (4) The name of the obligor and, if known:
> > (i) The obligor's address and social security number;
> > (ii) The name and address of the obligor's employer and any other source of income of the obligor; and
> > (iii) A description and the location of property of the obligor in this state not exempt from execution; and
> (5) The name and address of the obligee and, if applicable, the agency or person to whom support payments are to be remitted.

Tenn. Code Ann. § 36-5-2602(a) (Supp. 1999).

Thereafter, the registering court notifies the nonregistering party that the decree has been registered and sends the nonregistering party a copy of the decree along with the documents and information that accompany it. Tenn. Code Ann. § 36-5-2605(a) (Supp. 1999). The court also notifies the nonregistering party of his or her ability to contest the validity or enforcement of the support order and the consequences of failing to do so. Tenn. Code Ann. § 36-5-2605(b) (Supp. 1999).

In the present case, Wife admits that she failed to follow this procedure with respect to the Kansas court's decree. However, she contends that her failure to domesticate the Kansas court's decree should not result in the reversal of the chancery court's property division because Husband was given notice that Wife intended to rely on the decree. She therefore asserts that Husband has been afforded all due process rights that would have been available to him had the decree been registered pursuant to UIFSA. We disagree.

The registration and notice provisions of UIFSA were designed not only to put the nonregistering party on notice of the registering party's intent to enforce a foreign support order but also to provide the nonregistering party with a procedure to contest the order's validity or enforcement. See Tenn. Code Ann. § 36-5-2605 (Supp. 1999). A party who wishes to contest the validity or enforcement of a foreign support order or who seeks to vacate the registration of a foreign decree has the burden of proving one or more of the defenses listed in Tennessee Code Annotated section 36-5-2607(a).[3] The nonregistering party has twenty days from the date the notice of registration was served to request a hearing to contest the order's validity or enforcement. Tenn. Code Ann. § 36-5-2606(a) (Supp. 1999). In this case, however, the Kansas court's decree was never registered, so a notice of registration was never served upon Husband. The chancery court, therefore, enforced the Kansas court's child support order without first giving Husband the opportunity to contest its validity or enforcement.

Husband contends that the Kansas court did not have personal jurisdiction over him when it entered its Judgment and Final Decree of Divorce. Furthermore, in his Motion to Vacate Child

---

[3] A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of the following defenses:

(1) The issuing tribunal lacked personal jurisdiction over the contesting party;
(2) The order was obtained by fraud;
(3) The order has been vacated, suspended, or modified by a later order;
(4) The issuing tribunal has stayed the order pending appeal;
(5) There is a defense under the law of this state to the remedy sought;
(6) Full or partial payment has been made; or
(7) The statute of limitation under § 36-5-2604 (Choice of Law) precludes enforcement of some or all of the arrearages.

Tenn. Code Ann. § 36-5-2607(a) (Supp. 1999).

Custody, Support, and Visitation Orders from the State of Kansas, Husband stated that "should there have been or should there be in the future any attempt to register the Kansas Child Custody, Support, and Visitation orders in Tennessee that [he] does contest those orders and moves that they be vacated." As such, Husband has indicated an intent to contest the validity and enforcement of the Kansas court's decree and has asserted a defense that, if proven, would result in the decree being declared void. He should be given an opportunity to raise this defense pursuant to the procedure set forth in UIFSA.

Husband's remaining issues are without merit.

## Conclusion

We conclude that the chancery court enforced parts of the Kansas court's decree by reducing Husband's share of the marital property by the amounts of the child support arrearage and discovery-related sanction assessed by the Kansas court. This enforcement violated UIFSA's registration and notice provisions because the Kansas court's decree was never registered in Tennessee and Husband was never provided notice of the registration or an opportunity to contest the validity and enforcement of the decree. Therefore, the judgment of the Court of Appeals is reversed, and the case is remanded to the chancery court for proceedings consistent with this opinion. On remand, the chancery court shall ensure that the registration and notice procedures set forth in UIFSA are followed and shall consider the defenses raised by Husband before determining whether the Kansas court's decree should be enforced. Costs of this appeal are taxed against the appellee, Lynette Suzanne Jolly, and her surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE